**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **BREEANNA DAO,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**REGENCY MANAGEMENT SERVICES, LLC**<br><br>**Defendant.** | **Civil No. 4:24-cv-12849-MRG** |

**ORDER ON SECOND MOTION TO DISMISS [ECF NO. 28]**

**GUZMAN, J.**

Plaintiff Breeanna Dao ("Dao") brings this four-count lawsuit against her former employer, Regency Management Services d/b/a Ashley Home Store ("RMS") for alleged gender discrimination, harassment and retaliation, as well as violations of Massachusetts wage and hour laws. Before the Court is Defendant's Motion to Dismiss Counts II, III, and IV of the Amended Complaint. [ECF No. 28]. For the reasons set forth below, the motion is **GRANTED**.

## I. BACKGROUND

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court sets forth the following facts from Plaintiff's complaint, taking as true all well-pleaded allegations and drawing all reasonable inferences in the Plaintiff's favor. Morales-Tañón v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).

### A. Relevant Facts

Defendant RMS hired Dao in November 2022 as an Office and/or Operations Manager in its Westborough, MA, Ashley Home Store. [Am. Compl. ¶ 11, ECF No. 27]. Dao reported

primarily to Jose Guerra ("Guerra") and Brandon Coleman ("Coleman"), the Defendant's regional managers. [Id. ¶ 24]. Dao's primary duties and responsibilities included keeping various aspects of the store operational and organized in accordance with the Defendant's policies and procedures and Dao's regional managers' instructions. [Id. ¶ 12]. This included "supervising Defendant's customer service representatives . . . ensuring sales people were meeting their targets . . . organizing logistics for sales trainings (the content and presentation of which was dictated by others) and ensuring maximum participation at them; and coaching sales staff to meet the stores' sales goals (goals set by regional management)." [Id. ¶ 13].

Dao was part of a team that helped RMS open its Westborough store on January 20, 2023, about two months after Dao started working for the Defendant. [Id. ¶ 23]. Shortly after the store opened, Dao alleges that Guerra told her that "he intended to promote her to General Manager" after the current general manager, Joshua Pepin ("Pepin"), left. [Id. ¶ 25]. After Pepin gave his notice in mid-February 2023, Guerra expressly told Dao that she would be promoted to General Manager of the Westborough Store. [Id. ¶ 26]. Guerra told Dao that her salary following the promotion would be $55,000. [Id. ¶ 40]. Dao then assumed the responsibilities of General Manager in the interim for two weeks, without receiving any formal promotion or pay increase. [Id. ¶ 30]. RMS did not end up promoting Dao and instead hired an outside male candidate. [Id. ¶ 31]. Guerra told Dao that he did not promote her because she "had no furniture experience" and that Dao could learn from someone with furniture experience and be promoted when they left. [Id. ¶ 32]. Dao later found out that the outside male candidate hired for the position of General Manager also lacked furniture experience, with the candidate even admitting to fellow co-workers that he had "***no*** pertinent experience." [Id. ¶ 33]. Dao alleges that she was not promoted on account of her sex, that

the reasons proffered by RMS were "blatantly pretextual," and that the company wanted to hire a man over a woman. [Id.]

Dao points to a larger trend of the Defendant's behavior in treating women differently. [Id. ¶ 34]. Dao also alleges that, during her tenure, the Defendant only had one female general manager in the region, and she was replaced by a male. [Id. ¶ 35]. She alleges that women were relegated to lesser roles and otherwise "demeaned and treated like second-class citizens by upper management." [Id.] She also points to the salary discrepancy between what she was promised when told she would be promoted to General Manager ($55,000) and what Pepin, the previous male General Manager, was paid ($65,000). [Id. ¶ 40].

In the alternative, Dao argues that she was not promoted in retaliation for reporting the sexual harassment of a coworker. [Id. ¶ 99]. On February 24, 2023, Dao received a report that Joseph Mercurio ("Mercurio"), a male team captain, had been harassing a female trainee the prior evening. [Id. ¶ 41]. Dao alleges that Mercurio told the female trainee that "she was beautiful, he wanted a clone of her and he hoped her relationship with her husband didn't last so he could 'have' her." [Id.] In accordance with RMS's Harassment and Discrimination Complaint Reporting Procedures, Dao reported Mercurio's behavior to RMS' Human Resources Department ("HR") without notifying her regional managers. [Id. ¶ 42]. HR told Dao that Mercurio would be suspended pending an investigation, however Dao learned that Mercurio was set to return to the store on or around February 28, 2023, without any corrective action taken. [Id. ¶¶ 43–44]. Upon learning that HR planned to reinstate Mercurio, Dao called HR expressing her displeasure and implored the Department to take action. [Id. ¶ 45]. Dao alleges that after her phone call with HR, the Department changed its mind and decided to terminate Mercurio. [Id. ¶ 46]. When Guerra and Coleman learned of Dao's reports to HR regarding Mercurio, they criticized her for reporting the

incident directed to HR instead of discussing it with them, despite the policy stating that such reports be made directly to HR. [Id. ¶ 47]. Dao emphasizes the proximity in time between her reports to HR and her being passed over for the promotion, noting that, prior to February 24, 2023, Dao had been told she would be promoted to General Manager of the Westborough Store, and "it was only after this incident that Messrs. Guerra and Coleman decided not to promote Ms. Dao." [Id. ¶ 48].

Dao's employment with RMS ended on March 23, 2023, after making a report to HR. [Id. ¶¶ 64, 71–72]. This report was specifically related to Dao learning of an email sent from Coleman to Guerra on February 28, 2023. [Id. ¶ 55]. The email chain began with a suggestion from Dao to Coleman and Guerra with information she had learned about a competitor's mattress department and how the Westborough Store might be able to compete better. [Id.] In the February 28th email, Coleman had forwarded Dao's email to Guerra stating, "OMG she needs a tranquilizer." [Id.] Dao alleges that this statement "is emblematic of the culture Defendant fostered – women were to 'know their role' and not welcome to participate meaningfully [in] business decisions; and when women stepped out of 'their role,' Defendant's regional management apparently thought they should be tranquilized." [Id. ¶ 56].

Upon learning of the email, Dao called RMS's HR department to report it, and expressly advised Shanell Britto ("Britto") in HR that she "(1) did not feel safe with regional managers speaking about her that way; (2) did not want to speak to either of her regional managers until corrective action had been taken; and (3) was leaving the store for the day, out of fear for her safety, and would not return to the store unless/until something was done about the situation." [Id. ¶¶ 60-61]. Britto told Dao that she would call her back in thirty minutes, but Dao alleges Britto never called her back. [Id. ¶ 62]. Instead, Dao alleges that Britto immediately reported her HR

complaint to Guerra, as within minutes of hanging up with Britto, Dao received a call from Guerra. [Id. ¶ 63]. Rather than investigate the incident "discretely," as required by RMS's Harassment and Discrimination Complaint Reporting Procedures, Dao alleges Britto reported Dao's concerns to one of Dao's "harassers." [Id.] In a later e-mail, Britto claimed that she had attempted to call Dao back on her cell phone on March 22, 2023, but Dao's call log shows no missed calls from Britto. [Id. ¶ 64]. Furthermore, Britto claimed in the email that she had not spoken to Guerra about Dao's complaint and/or the fact that Dao did not feel safe returning to work. [Id.] However, Guerra called the Westborough Store on March 23, 2023 to falsely say that Dao had quit. [Id.]

Neither Britto nor anyone in RMS's HR department ever followed up with Dao to interview her, advise her that they were investigating the situation, or notify her that corrective action would be taken "such that she could feel safe returning to work." [Id. ¶ 65]. As RMS did not take the proper steps to investigate and remedy her concerns about the harassment and retaliation she was receiving, Dao found it intolerable to return to work. [Id. ¶¶ 70–71].

Dao alleges she suffered gender-based discrimination, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), and Mass. Gen. Laws ch. 151B, § 4 ("Chapter 151B"). Regarding her Wage Act claim, Dao alleges that she had been misclassified by RMS as an administrative employee, and, as a result, she was deprived of overtime that she would otherwise have been entitled to under the Massachusetts Wage Act. Mass. Gen. Laws ch. 151, § 1A.

Upon amending her complaint, Plaintiff added supplemental allegations. Expanding upon her own qualifications for the General Manager position, Dao alleges that she was a "highly qualified candidate" because she had eighteen months of retail experience, two years of experience selling real estate, and two years of experience as an operations manager. [Am. Compl. ¶ 28]. Dao

also alleges that her supervisor, Mr. Guerra, "expressly told [her] that she was the ideal candidate. [Id. ¶ 29]. Additionally, she elaborated upon the alleged tranquilizer comment, arguing that it was motivated by her sex. [Id. ¶ 57 ("On information and belief, this statement was motivated by Ms. Dao's sex" and noting that managers were open to suggestions from male employees on store operations, but not suggestions from female employees.)] Dao also alleges that the Defendants did not honor the company's employee handbook. [Id. ¶¶ 68–70]. Further, Dao incorporates into her Amended Complaint the Defendant's "own internal records" concerning the male candidate who was hired as the General Manager instead of Dao. [Id. ¶ 33]. The Defendants included that male candidate's resume, [ECF No. 29-1], in their motion to dismiss, which Dao also incorporates into her opposition to the motion to dismiss. [ECF No. 33 at 13].[1]

### B. Procedural History

In compliance with Chapter 151B § 5, Dao filed a verified charge with the Massachusetts Commission Against Discrimination ("MCAD") on August 30, 2023. [Compl. ¶ 8, ECF No. 1-1]. Dao filed a notice of withdrawal of her charge with MCAD upon filing this suit in Worcester Superior Court on October 16, 2024. [Id.] On November 15, 2024, the Defendant filed a Notice of Removal in the District Court of Massachusetts. [ECF No. 1-4]. Shortly after on November 22, 2024, RMS filed a partial motion to dismiss "the constructive discharge claim included in [Counts III and IV]." [ECF No. 8 at 2]. On June 5, 2025, the Court ordered Plaintiff to file her "right to sue" letter from the EEOC, which is a prerequisite to filing her Title VII claims. [ECF No. 20].

[1] Both the Amended Complaint [Am. Compl. ¶ 33] and Dao's opposition to the motion to dismiss, [ECF No. 33 at 13–14], expressly refer to the "Defendant's own internal records" regarding the male candidate's experience (namely, his resume) [ECF No. 29-1]. Therefore, the Court may consider this resume incorporated to the Amended Complaint. Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993) (finding that the court could consider outside documents because they fell into a narrowly carved exception "for documents sufficiently referred to in the complaint").

Plaintiff responded by filing two responses to the show cause order, in which she asked for an extension or the exhaustion requirement to be waived, before filing her "right to sue" letter on July 16, 2025. [ECF Nos. 21, 24, 25]. On September 10, 2025, the Court denied the Motion to Dismiss, identifying deficiencies in the allegations and giving Plaintiff leave to amend. [ECF No. 26]. On October 9, 2025, Plaintiff amended her complaint, [Am. Compl.] and, on October 23, 2025, Defendant moved again for partial dismissal of Counts II, III, and IV for failure to state a claim. [ECF No. 28]. On November 6, 2025, Plaintiff filed an opposition to the motion to dismiss, to which Defendant replied on December 8, 2025. [ECF Nos. 33, 36].

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Dismissal under Rule 12(b)(6) is appropriate "if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of a plaintiff, the court determines that [the complaint] 'fails to state a claim upon which relief can be granted.'" Doe v. Williston Northampton Sch., 766 F. Supp. 2d 310, 311 (D. Mass. 2011) (quoting Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005); Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a plaintiff must "state a claim . . . that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted). Despite this generous standard, "Rule 12(b)(6) is not entirely a toothless tiger . . . . The threshold for stating a claim may be low, but it is real." Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (quotation omitted). The complaint must therefore "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley

v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988); see DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (explaining that the complaint must "allege a factual predicate concrete enough to warrant further proceedings.").

## III. DISCUSSION

In Count II, Dao alleges disparate treatment in RMS's failure to promote her to the role of General Manager. In Count III, Dao alleges RMS is liable for fostering a hostile work environment. In Count IV, Dao brings a retaliation claim for RMS's failure to promote her after she reported the sexual harassment of a co-worker to the HR Department.

As discussed below, Plaintiff's new allegations are still insufficient to salvage these claims despite being given leave to amend. Additionally, the Court finds that Defendants articulated a non-pretextual reason for hiring the male candidate.

### A. Discrimination on Account of Sex Claim (Count II)

Since Plaintiff alleges gender-based discrimination, she must make a prima facie case showing that "(1) [s]he is a member of a protected class, (2) [s]he was qualified for the open position of [General Manager], (3) [s]he was denied the position, and (4) the position was given to someone with similar or inferior qualifications." Ahmed v. Johnson, 752 F.3d 490,496 (1st Cir. 2014) (citing Goncalves v. Plymouth Cnty. Sheriff's Dep't, 659 F.3d 101, 105 (1st Cir. 2011)). The standard is similar under Chapter 151B; however, Title VII requires more than 151B because it requires a showing that the employer's reasons for the adverse employment action were a pretext for discrimination, rather than merely untrue. See O'Horo v. Bos. Med. Ctr. Corp., 131 F.4th 1, 15 (1st Cir. 2025); López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 28 (1st Cir. 2023)

Here, Plaintiff once again fails to show a prima facie case of sex-based failure to promote because she has not proven that the position was given to someone with similar or fewer

qualifications than herself. Dao notes that she has no experience selling furniture, but has multiple years of sales experience including selling "high-end clothes and accessories" and real estate. [Am. Compl. ¶¶ 28, 32]. She also worked for less than two years as an operations manager. [Id. ¶ 28]. On a Rule 12(b)(6) motion, the court "can consider (a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in plaintiff's response to the motion to dismiss." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005) (internal quotations omitted)). As the Court views the resume of the hired male candidate—Paul Sieveking ("Sieveking")— as incorporated to the Amended Complaint, the Court will consider his experience in direct comparison to Dao's. When viewed in reference to Dao's qualifications, Sieveking's resume indicates he similarly had multiple years of retail sales experience, but also that he had over twenty-three years of combined managerial experience. [ECF No. 29-1]. Sieveking held positions such as "Company Manager," "Freelance Stage Manager," and "Assistant Education Program Manager." [Id.] His previous responsibilities included directing a team of full-time employees, overseeing department budgets, and coordinating schedules. [Id.] "Retail [m]anagement . . . budgeting, sales, recruiting, [and] hiring/separation" are explicitly listed under "Special Skills." [Id. at 3].

Like Dao, Sieveking did not have furniture experience. [Am. Compl. ¶ 33; ECF No. 29-1]. However, his credentials evidence greater experience supervising and directing others and his skills clearly aligned with those required of a General Manager, which supports Defendant's assertions that he was a more desirable competitor over someone with less experience. Here, because Plaintiff makes no showing that a similarly or less qualified individual received the promotion she was denied, the Court finds that she cannot prevail on her failure to promote claim.

See Goncalves, 659 F.3d at 106. In other words, because the evidence shows that Sieveking was a stronger candidate than Dao–or, at a minimum, that they were not similarly qualified–she cannot prevail on this claim. See id. Accordingly, the Motion to Dismiss Count II is **GRANTED**.

**B. Hostile Work Environment (Count III)**

To prove her gender-based hostile work environment claim, Plaintiff must establish (1) unwelcome harassment that was (2) severe and pervasive, and (3) both objectively and subjectively offensive, and (4) that she was a member[] in a protected class, (5) that the harassment was motivated by sex, and (6) [that there is] a basis for employer liability." O'Horo, 131 F.4th at 19 (quotation marks omitted) (quoting Maldonado-Cátala v. Mun. of Naranjito, 876 F.3d 1, 10 n.11 (1st Cir. 2017)). "[A] hostile work environment is one that is pervaded by harassment and abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses formidable barriers to the full participation of an individual in the workplace." Brissette v. Franklin Cnty., Sheriff's Off., 235 F. Supp. 2d 63, 85 (D. Mass. 2003) (alterations in original) (internal quotations and citations omitted). Under Title VII and Chapter 151B, "simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in terms and conditions" to show an objectively hostile workplace environment. Baer v. Montachusett Reg'l Sch. Dist., 380 F. Supp. 3d 143, 150 (D. Mass. 2019) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). "Along this continuum, rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." Noviello v. City of Bos., 398 F.3d 76, 92 (1st Cir. 2005).

Dao's amended allegations do nothing to change the Court's prior determination that the alleged harassment was not "sufficiently severe or pervasive" enough to constitute a hostile work environment. See O'Horo, 131 F.4th at 19 (citation omitted). In the Amended Complaint Dao

simply added the conclusory assertion that, "[o]n information and belief," the alleged tranquilizer comment "was motivated by Ms. Dao's sex." [Am. Compl. ¶ 57]. The allegation that managers were open to suggestions from male employees on store operations, but not suggestions from female employees likewise does not amount to a hostile workplace. Even taking all the allegations together, the asserted facts do not meet the requisite level of severe or pervasive conduct to support a hostile work environment claim. See Noviello, 398 F.3d at 84; id. at 92 ("The thrust of [a hostile work environment] inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment" (citation omitted)). Nor do these allegations objectively show a sex-based motivation. A hypothetical male employee, showing the same amount of enthusiasm for mattress sales, could have received a similar comment about "need[ing] a tranquilizer." [Am. Compl. ¶ 55]. While the comment was certainly rude and potentially ostracizing, it is not of the severity contemplated by the case law nor does it evidence a sex-based motive.

For the reasons stated above, the Court finds the Amended Complaint is still insufficient in proving how "women were treated as second-class citizens" in ways that are not conclusory or speculative. [Am. Compl. ¶ 90]. Consequently, the Motion to Dismiss Count III is **GRANTED**.

### C. Retaliation (Count IV)

To establish a prima facie case of retaliation under Title VII and Chapter 151B, a plaintiff must show: (1) "[she] engaged in a protected activity, known to the employer"; (2) "[she] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment actions." Ruffino v. State St. Bank and Trust Co., 908 F. Supp. 1019, 1044-45 (D. Mass. 1995).

The Court previously held that Dao meets her prima facie burden because (1) reporting the harassment of her female coworker is a protected activity; (2) RMS failing to promote her is an adverse employment action; and (3) the two events occurred very close in time, suggesting causation. See Rae v. Woburn Pub. Sch., 113 F.4th 86, 100 (1st Cir. 2024); Connell v. Bank of Bos., 924 F.2d 1169, 1179 (1st Cir. 1991) (noting that adverse employment actions include failure to promote); Ruffino, 908 F. Supp at 1046 (finding that even though there is no direct evidence of the causal connection, "temporal proximity may provide the necessary nexus"). Once plaintiff has proven a prima facie case, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory . . . reason for its employment decision." Catala v. Dep't of Veterans Affs., No. 08-1822, 2010 WL 1664884, at *7-8 (D. P.R. Apr. 21, 2010). Here, RMS claims Dao was never qualified for the position of General Manager and that was why her supervisors chose not to promote her. At this stage, the burden shifts back to Dao to show that the reason was pretextual (under Title VII) or untrue (under Chapter 151B). See Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 26 (1st Cir. 2004); O'Horo, 131 F.4th at 15. Dao alleges RMS's reason for denying her the General Manager position is both pretextual and untrue because the candidate that was ultimately hired lacked the same "furniture experience" the Defendant told her was needed for the position. [Am. Compl. ¶¶ 32, 33]. However, as discussed with Count II, the Court finds that the evidence in the record demonstrates that Sieveking was more qualified than Dao and that Defendant's hiring of him over her does not indicate pretext for discrimination.

Dao's theory of retaliation where constructive discharge constitutes the adverse employment element of the claim fares no better. "An employee's resignation constitutes an 'adverse employment action' only where the employee's working conditions were so difficult that a reasonable person in her position 'would have felt compelled to resign.'" Stratton v. Bentley

Univ., 113 F.4th 25, 38-39 (1st Cir. 2024) (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002)); see also Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 613 (1st Cir. 2000) ("[P]laintiff must prove that his employer imposed 'working conditions so intolerable [ ] that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities.'" (quoting Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 46 (1st Cir. 1999) (alterations in original))). "[T]he fact that [a] plaintiff endured a hostile work environment – without more – will not always support a finding of constructive discharge." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002); see also Pa. State Police v. Suders, 542 U.S. 129, 149 (2004) (noting hostile work environment is the "lesser included component" of the "*graver* claim" of constructive discharge). For the same reasons that Dao has not stated a claim for hostile work environment, see supra, she likewise cannot meet her burden in establishing constructive discharge as an adverse employment action. Accordingly, the Motion to Dismiss Count IV is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss Counts II, III, and IV of the Amended Complaint, [ECF No. 28], is **GRANTED**. Count I remains pending.

**SO ORDERED.**

Dated: September 30, 2026

/s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge